## THE WILLIAM E. CHAPMAN.

### (Circuit Court of Appeals, Third Circuit. November 24, 1911.)

#### No. 1,556.

COLLISION (§ 91*)—STEAM VESSELS MEETING—FAILURE TO OBSERVE PASSING AGREEMENT.

A collision in East River between a steamer going down and a wrecking tug going up *held* on the evidence due solely to the fault of the tug in attempting to cross ahead of the steamer after having assented to an agreement to pass starboard to starboard.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 187–192; Dec. Dig. § 91.*

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

Appeal from the District Court of the United States for the District of New Jersey.

Suit in admiralty by John E. Clancey, receiver of the Merchants' Transportation Company, and the Home Insurance Company, against the steam wrecking tug William E. Chapman; the Merritt & Chapman Derrick & Wrecking Company, claimant. Decree for libelants, and claimants appeal. Affirmed.

Avery F. Cushman, for appellants.

J. J. Macklin, for appellees.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. This libel was brought to recover damages suffered by libelant's steam freighter, Ann Eliza, through the alleged negligence of respondent's steam tug William E. Chapman. The vessels collided in New York Harbor and the Ann Eliza was sunk. The court below found the Chapman solely in fault and entered a decree in libelant's favor for the damage to the Ann Eliza. From such decree respondent appealed to this court.

The proofs show that about 4 p. m. on the day of the collision the Ann Eliza left East River pier No. 18 in New York Harbor bound for Trenton, N. J. The day was clear, the tide ebb and running about 3½ miles per hour. When about a thousand feet off pier No. 6 on the New York shore, going downstream and headed somewhat toward Brooklyn, the Ann Eliza sighted the Chapman coming toward her. The Chapman was then opposite South Ferry, below pier No. 1, about 800 feet from the New York shore and headed a little eastward of a straight course up the river. The Ann Eliza at once signaled by two whistles to the Chapman her desire to pass starboard to starboard. This course was at once accepted by the Chapman; the latter blowing two whistles in return. The vessels were then about 800 feet apart. From this point on there is a sharp conflict of testimony between the two vessels; each claiming the other failed to carry out the proposed maneuver and thereby caused the collision. The case turned on this question of fact, and the court below gave decisive weight to the testimony of Taylor, a disinterested witness, who, as

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

master of the Gamma, was in close proximity to the two vessels, had an unobstructed view of their maneuvers, and was required to watch them in order to regulate the movements of his own vessel.

We think the court below was right in giving the weight it did to the testimony of this witness and in holding the Chapman in fault. In addition thereto, we think proof of the fault of the Chapman is furnished by the testimony of her master. He says that when the Ann Eliza sank her master came on board the Chapman, and:

"I asked him why he blew two whistles and then backed his boat, and he said, 'I did not think I could get across your boat.' * * * I said, 'Why didn't you let me go across?' and he said, 'I did not think you could get across.'"

To our mind this goes, in addition to Taylor's testimony, to sustain the contention of the Ann Eliza that in spite of the signal the Chapman tried to cut across her bow, and that the Ann Eliza, finding the Chapman doing so, then began backing to lessen the likelihood or the results of a collision. The question of the Chapman's master, "Why didn't you let me go across?" tends to show that his purpose was to cross the Ann Eliza's bow, a course he had no right to attempt when by his answering signal the Chapman had agreed to a starboard pass.

The decree below is therefore affirmed.